**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERNST & YOUNG LTD. BERMUDA | : | CIVIL ACTION NO. |
| and ERNST & YOUNG LLP, | : | 09-cv-1164 (JCH) |
| Petitioners, | : | |
| | : | |
| v. | : | |
| | : | |
| SUSAN M. QUINN, et al., | : | OCTOBER 26, 2009 |
| Respondents | : | |

**RULING RE: PETITION TO COMPEL ARBITRATION AND FOR A STAY (Doc. No. 1)**

**I.     INTRODUCTION**

Ernst & Young Ltd. Bermuda ("Ernst & Young Bermuda") and Ernst & Young LLP

("Ernst & Young US") (collectively, "Ernst & Young") bring this Petition to Compel

Arbitration and For a Stay pursuant to the Convention on the Recognition and

Enforcement of Foreign Arbitral Awards ("Convention"), implemented at 9 U.S.C. §§

201-208.  Ernst & Young asserts that the claims brought against it in Connecticut

Superior Court by respondents Susan Quinn, Peter Pressman, and the David B.

Sternberg Inc. Employee Pension Trust are governed by arbitration agreements

between Ernst & Young Bermuda and the Stewardship Credit Arbitrage Fund, LLC

("SCAF" or "the Fund"), a fund in which the respondents are investors.  Ernst & Young

seeks relief in this court to stay that state court proceeding and compel arbitration in

accordance with those agreements.  For the reasons that follow, the Petition is granted.

**II.     BACKGROUND**

Ernst & Young Bermuda was engaged by SCAF, an investment fund and

Delaware Limited Liability Company with its principal place of business in Greenwich,

Connecticut, to audit and report on SCAF's financial statements for the years ending

December 31, 2002 through December 31, 2006.  Each of the engagement letters

between Ernst & Young Bermuda and SCAF included an arbitration clause containing

language that provided:

> . . . any dispute or claim arising out of or relating to the Audit
> Services, this Agreement, or any other services provided by or on
> behalf of Ernst & Young or any of its subcontractors or agents to
> the Fund or at the Fund's request (including any matter involving
> any third party for whose benefit any such services are provided),
> shall be submitted first to voluntary mediation...then to binding
> arbitration [in accordance with separate attachments to] this
> Agreement.

Engagement Letter of Dec. 7, 2006, Martin Decl. Exh. B (Doc. No. 1) at ¶ 25; see also

Martin Decl. Exhs. C-F (letters from 2005, 2004, 2003, and 2002 respectively that

contain identical arbitration agreements).

During the period that Ernst & Young Bermuda was engaged by SCAF, SCAF's

capital was heavily invested in Petters Group Worldwide, LLC and its affiliates ("Petters

Group"), a company organized by Thomas E. Petters.  In September 2008, a federal

task force revealed that Petters Group was in fact a massive Ponzi scheme centered

around the fictitious sale of electronics equipment to retail wholesale outlets.  See

Respondents' Mem. of Law in Opp. to Pet'rs' Mot. to Compel (Respondents' Mem.)

(Doc. No. 17) at 2.[1]  As a result of SCAF's involvement with this scheme, the Fund's

investment capital suffered a severe diminution of value.  See id.

The respondents in this action, Susan Quinn, Peter Pressman, and David B.

---

[1] Petters currently faces criminal prosecution and civil charges in federal court.  See
Respondents' Mem. at 2.

Sternberg Inc. Employee Pension Trust ("Sternberg Trust") (collectively, "state plaintiffs"), were all investors in SCAF.  On April 22, 2009, they initiated suit against numerous parties,[2] including the petitioners in this action, Ernst & Young Bermuda and Ernst & Young US, in the Connecticut Superior Court for the District of Stamford-Norwalk.  The state plaintiffs alleged that each of the state defendants had committed misconduct that caused the financial losses state plaintiffs suffered as a result of their investment in SCAF.  See Respondents' State Court Complaint, Martin Decl. Exh. A (State Complt.) (Doc. No. 1).  Quinn and Pressman asserted claims on their own behalf and on behalf of others similarly situated.  Id. at 1.  Sternberg Trust brought its action derivatively on behalf of SCAF.[3]  Id.  The State Complaint contains twenty-one counts in total.  See id. at ¶¶ 77-213.  As to federal petitioners Ernst & Young Bermuda and Ernst & Young US, the State Complaint alleges that they committed misconduct in performing audits of SCAF's financial statements that caused respondents to retain their investment in SCAF, or otherwise partially caused SCAF's financial losses.  See generally id.  Specifically, the State Complaint includes claims against Ernst & Young for breach of fiduciary duty, negligence, unjust enrichment, an accounting, common law fraud, negligent misrepresentations, aiding and abetting common law fraud, aiding and abetting breach of fiduciary duty, and Connecticut Securities Act violations.  See id. at

---

[2] Stewardship Credit Arbitrage Fund, LLC; Stewardship Investment Advisors, LLC; Acorn Capital Group, LLC; Marlon Quan; Ernst & Young, LLP; Ernst & Young Ltd. Bermuda; Pinnacle Fund Administration, LLC; Gustav E. Escher, III (collectively "State Defendants").

[3] Originally, David Sternberg filed a claim derivatively in his individual capacity.  State Plaintiffs and State Respondents have, in state court, stipulated to substitute "Sternberg Trust" for "David Sternberg" since Sternberg does not have standing on his own to sue derivatively.  Although the Connecticut Superior Court has not yet ruled on this proposed substitution, this Ruling will refer to Sternberg as "Sternberg Trust."

¶¶ 77-202.

On July 23, 2009, Ernst & Young Bermuda filed a Petition to Compel Arbitration and For a Stay pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, implemented at 9 U.S.C. §§ 201-208.  Ernst & Young US filed a similar motion on July 24, 2009.[4]  Ernst & Young contends that the state plaintiffs' claims must be resolved through arbitration in accordance with the arbitration agreements between Ernst & Young Bermuda and SCAF. They also petition this court to stay the state court proceeding.

III.    **DISCUSSION**

A.      Jurisdiction and Authority to Compel Arbitration and Order a Stay

Federal courts have jurisdiction over claims that are governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.  9 U.S.C. § 203 ("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States.").  If the state plaintiffs' claims fall within the purview of the Convention as Ernst & Young contends, then this court has jurisdiction over the present action.

If jurisdiction exists, the court has the authority under the Convention to compel

_____

[4] Ernst & Young US claims that it had no involvement in the audit reports generated for SCAF by Ernst & Young Bermuda.  See Mem. of Law in Supp. of Ernst & Young LLP's Mot. to Compel Arbitration and For a Stay.  Nonetheless, they argue that, if the basis for their inclusion in the state court action is that they worked in tandem with Ernst & Young Bermuda to provide auditing services, then they too should have claims made against them arbitrated under the agreements.  See Vertucci v. Orvis, No. 05-cv-1307, 2006 U.S. Dist. Lexis 39320, at *19 (D. Conn. 2006) ("[B]ecause Plaintiff's Complaint completely intertwines his claims against all of the defendants, he is now estopped from denying that the arbitration clause in his agreement with [one defendant] controls the claims against all of the defendants.").  The respondents have not disputed Ernst & Young US's arguments.  For the purposes of this Ruling, then, the distinction between respondents' claims against Ernst & Young Bermuda and Ernst & Young US is immaterial because each requests identical relief.

arbitration.  9 U.S.C. § 206 ("A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.").  Additionally, if the dispute between respondents and Ernst & Young is in fact governed by the Convention as Ernst & Young alleges, then this court also has the authority to stay the state court action that respondents have brought against Ernst & Young.  Although the Anti-Injunction Act, 28 U.S.C. § 2283, typically prevents federal courts from interfering with the proceedings of state courts that have already been initiated, such stays are proper under the Convention.  See Emilio v. Sprint Spectrum, L.P., 315 Fed. Appx. 322, 325 (2d Cir. 2009) (determining that district court's injunction to stay state court proceeding was proper where district court compelled arbitration); see also In re Arbitration Between Nuclear Elec. Ins. Ltd. and Cent. Power & Light Co., 926 F. Supp. 428, 436 (S.D.N.Y. 1996) (staying a state court proceeding because courts in the Southern District of New York have "consistently held that a stay, when issued subsequent to or in conjunction with an order compelling arbitration concerning the same subject matter as the state court proceeding falls within one or both of the [exceptions to the Anti-Injunction Act].").

B.     Extension of the Convention to the Arbitration Agreements Between
       SCAF and Ernst & Young Bermuda

Section 202 of the FAA delineates those arbitrations that the Convention covers:

> An arbitration agreement or arbitral award arising out of a legal
> relationship, whether contractual or not, which is considered as
> commercial, including a transaction, contract, or agreement
> described in section 2 of this title, falls under the Convention.  An
> agreement or award arising out of such a relationship which is
> entirely between citizens of the United States shall be deemed not

> to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.  For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

9 U.S.C. § 202.  The Second Circuit has identified within this statute four requirements that an arbitration agreement must satisfy.  The arbitration agreement: (1) must be in writing; (2) must provide for arbitration in the territory of a signatory of the Convention; (3) must concern commercial subject matter; and (4) must not be exclusively between citizens of the United States.  See Smith/Enron Cogeneration Ltd. P'ship Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 92 (2d Cir. 1999).

Respondents do not challenge the fact that the arbitration agreements contained in the engagement letters between SCAF and Ernst & Young Bermuda for the years 2002 through 2006 meet these requirements, and in fact conceded as much in oral argument.  Each of the arbitration agreements is in writing, provides for execution within either Bermuda or the United States (both of which are signatories to the Convention), and arises out of a commercial contract for audit services.  See Engagement Letter of Dec. 7, 2006, Martin Decl. Exh. B (Doc. No. 1); see also Martin Decl. Exhs. C-F. Additionally, because Ernst & Young Bermuda is a limited liability company organized under the laws of Bermuda with its principal place of business in Bermuda, at least one party to the arbitration agreement is a non-citizen of the United States.  Id. at 10. Respondents do not contest these conclusions.  Accordingly, the arbitration agreement between SCAF and Ernst & Young Bermuda falls under the purview of the Convention.

The issue before this court is whether state plaintiffs' claims are themselves

subject to that arbitration agreement.  If so, then those claims are also governed by the Convention, the respondents improperly circumvented the arbitration process in favor of pleading in state court, and Ernst & Young is entitled to the relief it requests.

C.      Extension of Arbitration Agreements to Respondents' State Court Claims

The dispute over whether respondents' state court claims are governed by the arbitration agreements between SCAF and Ernst & Young Bermuda turns on whether those claims are derivative or direct.  A shareholder's derivative action is "an equitable action by the corporation as the real party in interest with a stockholder as a nominal plaintiff representing the corporation."  May v. Coffey, 291 Conn. 106, 114 (2009); see also Tooley v. Donaldson, Lufkin & Jenrette, 845 A.2d 1031, 1036 (Del. 2004) (describing a derivative suit as enabling "a stockholder to bring suit on behalf of the corporation for harm done to the corporation").[5]  Because the arbitration agreement between SCAF and Ernst & Young Bermuda governs "any dispute or claim arising out of or relating to the Audit Services," that agreement would extend to any claim that actually belongs to SCAF, including any derivative claim brought by a SCAF investor on behalf of the Fund.  Engagement Letter of Dec. 7, 2006, Martin Decl. Exh. B at ¶ 25; see also Martin Decl. Exhs. C-F.  Ernst & Young claims that, notwithstanding that the state plaintiffs categorized some of their causes of action as direct, all of the state plaintiffs' claims are in fact "classically derivative."  Ernst & Young Bermuda Mem.at 11-

_____

[5] While SCAF is a limited liability corporation, many of the authorities cited concern cases involving other corporate forms.  These cases are still applicable, however, because variation in corporate form does not alter the general standards for evaluating whether claims are derivative or direct.  See Anglo American Sec. Fund, L.P., v. S.R. Global Int'l Fund, L.P., 829 A.2d 143, 149 (Del. Ch. 2003) ("The test for distinguishing direct from derivative claims in the context of a limited partnership is substantially the same as that used when the underlying entity is a corporation.").

16.  However, respondents assert that their state court claims are direct in nature and should therefore not be subject to the arbitration agreement.  <u>See</u> Respondents' Mem. at 8-16.

In considering these arguments, the court is aware of the strong federal policy in favor of arbitration agreements that is especially at play in international disputes.  <u>See Mitshubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 631 (1985). Furthermore, the court is mindful that "[t]he goal of the Convention is to promote the enforcement of arbitral agreements in contracts involving international commerce so as to facilitate international business transactions."  <u>David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)</u>, 923 F.2d 245, 250 (2d Cir. 1991).

   1. Choice of Law

There is a dispute between Ernst & Young and respondents as to whether Connecticut law or Delaware law should determine if the claims respondents filed in state court are direct or derivative.  Respondents argue for the application of Connecticut law.  They assert that, in <u>O'Connor v. O'Connor</u>, 201 Conn. 632 (1986), the Supreme Court of Connecticut abandoned the *lex loci delicti* (place of injury) test in favor of a "most significant relationship" test for tort cases and, under the <u>O'Connor</u> test, choice of law depends upon several factors: (1) the place where the injury occurred; (2) the place where the harmful conduct occurred; (3) the citizenship of the parties, and (4) the place where the parties' relationship is centered.  <u>See</u> Respondents' Mem. at 7. Respondents argue that an assessment of these factors indicates that Connecticut law should be applied to this case.

Ernst & Young argues for the application of Delaware law.  They contend that

O'Connor's "most significant relationship" test does not apply where a state statute

explicitly determines a particular choice of law issue.  See Reply Mem. of Law in

Further Supp. of E&Y Bermuda's Mot. to Compel (Doc. No. 25) at 3.  The O'Connor test

should not be implemented here, Ernst & Young argues, because Connecticut General

Statute section 33-727 provides the pertinent choice of law rule:

> In any derivative proceeding in the right of a foreign corporation,
> the matters covered by sections 33-720 to 33-727, inclusive, shall
> be governed by the laws of the jurisdiction of incorporation of the
> foreign corporation except for sections 33-723, 33-725 and
> 33-726.

CONN. GEN. STAT. § 33-727 (2005).

Ernst & Young is correct that Connecticut courts have looked to the law of the

state of incorporation to determine standing to maintain a shareholder derivative action.

See, e.g., May v. Coffey, 291 Conn. 106, 113 at n. 6 (2009) ("Because the company is

incorporated in the state of Connecticut, we apply the laws of this state to resolve the

plaintiffs' claim.").  At the same time, however, section 33-727 does not directly provide

for a choice of law rule that governs this case because it presupposes that the action is

derivative; the entire issue here is the ex ante consideration of whether respondents'

claims are, in fact, derivative or direct.

It is not necessary to wade too deeply into this conflict of laws issue, however,

because resolution of it is not necessary to a ruling by the court.  For the reasons that

follow, this court concludes that respondents' state court claims are derivative, not

direct, under both Connecticut and Delaware law.  Likewise, all parties agreed at oral

argument that the choice of law dispute is not dispositive to the issues before the court.

Because the Supreme Court of Connecticut and the Delaware Supreme Court have

articulated the distinction between derivative and direct claims differently, however, we will evaluate respondents' state court claims under both Connecticut and Delaware law.

>    2.    Connecticut Law

Under Connecticut law, the "central inquiry" to resolve disputes over whether a claim is derivative or direct is whether there exists "separate and distinct harm to the plaintiffs" or, instead, whether there is harm to only "the corporation and, accordingly, all shareholders collectively." May, 291 Conn. at 115. It is well established when a claim must be brought derivatively:

> It is axiomatic that a claim of injury, the basis of which is a wrong to the corporation, must be brought in a derivative suit, with the plaintiff proceeding secondarily, deriving his rights from the corporation which is alleged to have been wronged.

Id. at 114. Conversely, a party may only bring a direct action against a corporation if he "sustains a loss separate and distinct from that of the corporation, or from that of other shareholders, and thus has the right to seek redress in a personal capacity for a wrong done to him individually." Id.

>    a. Sternberg Trust's State Court Claims

Under Connecticut law, the claims that Sternberg Trust filed against Ernst & Young in Connecticut Superior Court are derivative.   First, Sternberg Trust filed "derivatively on behalf of Stewardship Credit Arbitrage Fund, LLC." State Cmplt. at 1. Second, in each of its causes of action, Sternberg Trust asserted that Ernst & Young violated its duties not to Sternberg Trust, but to SCAF. See, e.g., State Cmplt. at ¶ 178 ("In performing its audit of the Fund's financial statements, E&Y breached its duty of care *to the Fund* by violating applicable professional auditing standards, including

GAAS.") (emphasis added).  Finally, in its State Complaint, Sternberg Trust claimed only that Ernst & Young's conduct caused harm to SCAF's capital value.  See, e.g., State Cmplt. at ¶ 181 ("As a direct and proximate result of E&Y's conduct in its audits and the content of its unqualified audit opinion letters, *the Fund* has been damaged in an amount yet to be determined, and to be proven at trial") (emphasis added).  Indeed, in oral argument counsel for respondents conceded that all claims asserted derivatively in the State Complaint are subject to the arbitration agreement.  Because Sternberg Trust's state court claims are derivative in both form and substance, they belong to SCAF and are thus governed by the arbitration agreement between SCAF and Ernst & Young.

> b.      Quinn and Pressman's State Court Claims

Unlike the Sternberg Trust, the remaining respondents, Susan Quinn and Peter Pressman, filed their state claims "on their own behalf and on behalf of all others similarly situated." Id. at 1.  A plaintiff's decision to classify its claims as direct as opposed to derivative does not bind the court, however.  See Smith/Enron Cogeneration Ltd. P'ship Inc., 198 F.3d at 99 (2d Cir. 1999) ("If the allegations underlying the claims 'touch matters' covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them.") (citations omitted).  Notwithstanding respondents' classification of their claims as direct, under Connecticut law Quinn and Pressman's state court claims are also derivative in nature.

Quinn and Pressman do not allege a "separate and distinct injury," but instead argue that they suffered damages after SCAF's investments in the Petters Group sustained losses.  See, e.g., State Cmplt. at ¶ 61 ("As a result of Defendants' wrongful

conduct . . . SCAF's investment in Petters has been wiped out, thus causing Plaintiffs and the other Class members to suffer tens of millions of dollars in damages."); id. at ¶ 9 ("the vast majority of *the Fund's* overall investment capital had been deployed to purchase notes from Petters") (emphasis added).  Quinn and Pressman also claim that they were fraudulently induced by Ernst & Young (and others) to invest in SCAF, yet those allegations are also connected entirely to SCAF suffering financial losses.  They argue that, had Ernst & Young not made material misrepresentations, respondents would not have "purchased, continued to purchase, or retained their limited partnership investment interests in the Fund."  State Cmplt. at ¶ 114.  These claims are only actionable, however, because of the injuries sustained to the Fund; were it not for SCAF's loss in value, Quinn and Pressman could not claim that they were fraudulently induced because their induced decision to invest in SCAF would not have yielded cognizable damages.  Quinn and Pressman only allege harms that have accrued as a result of their having invested in SCAF.

Under Connecticut law, a claim arising from the diminution of value of a corporation's assets is derivative, not direct.  See Yanow v. Teal Indus., Inc., 178 Conn. 262, 281 (1979) ("Generally, individual stockholders cannot sue the officers at law for damages on the theory that they are entitled to damages because mismanagement has rendered their stock of less value, since the injury is generally not to the shareholder individually, but to the corporation – to the shareholders collectively."); see also May, 291 Conn. at 116 (arguing that diminution of value claims must be brought derivatively because the primary injury is to the corporation and shareholders only suffer an "indirect injury, a reduction in the value of their existing shares").  Even where one class

of shareholders suffers a more grievous injury than another class, the Supreme Court of Connecticut has determined that the more aggrieved class cannot maintain a direct action.  See May, 291 Conn. at 118 (finding that no direct action could be brought in response to below-value stock offering because entire corporation was harmed even though "participating shareholders were able and willing to offset the injury to their existing shares partially or completely by purchasing new shares at the unreasonably low price.").

Respondents cite numerous unpublished cases where courts have found the existence of a "separate and distinct" injury even where the harm was primarily sustained by a fund or corporation.  See Respondents' Mem. at 8-13.  In each of these cases, however, there were facts that significantly distinguish the case from the present action.  See, e.g., Adler v. Snoddy, No. X08CV020200492, 2004 WL 2284123 (Conn. Super. Ct. Sept. 15, 2004) (only one member of LLC was harmed when another member of LLC fraudulently induced selling of interest).

Respondents also identify In re Colonial Ltd. P'ship Litig., 854 F. Supp. 64 (D. Conn. 1994), as supportive.  However, the issue in In re Colonial was whether the litigant met the standing requirements to sue under the RICO statute.  Under the RICO statute, the critical inquiry to determine standing is whether a plaintiff "'has been injured in his business or property *by [reason] of the conduct constituting the violation*.'"  In re Colonial, 854 F. Supp. at 104 (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)) (emphasis in original).  As May v. Coffey makes unequivocally clear, however, the central issue in determining whether a claim is derivative or direct in the context of this case is whether there exists "separate and distinct harm to the plaintiffs."

-13-

May, 291 Conn. at 115.  In other words, while the In re Colonial court inquired as to the cause of the injury, it is the nature of the injury that controls here.  As discussed in greater detail above, the state plaintiffs have not asserted a "separate and distinct" harm.  Furthermore, whereas in In re Colonial the court determined that the plaintiff asserted damages beyond the diminution in the value of their investments, at oral argument respondents' counsel asserted that their measure of damages is based upon the respondents' amount of investment in the Fund.  The court interprets this to mean that the state plaintiffs' recovery is limited to the amount of financial loss SCAF suffered.  See supra at 11-12 (discussing damages asserted in respondents' State Complaint).  The circumstances here are thus distinguishable from In re Colonial.

Under Connecticut law "a claim of injury, the basis of which is a wrong to the corporation, must be brought in a derivative suit."  May, 291 Conn. at 114.  Thus, under Connecticut law, the state plaintiffs Quinn and Pressman have asserted derivative claims that should have been advanced through the alternative dispute resolution mechanisms provided for in SCAF's arbitration agreements with Ernst & Young.

      3.    Delaware Law

In Tooley v. Donaldson, Lufkin & Jenrette, Inc., the Supreme Court of Delaware established the factors for distinguishing between derivative and direct claims under Delaware law:

> We set forth in this Opinion the law to be applied henceforth in determining whether a stockholder's claim is derivative or direct. That issue must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?

-14-

Tooley, 845 A.2d at 1033 (finding no direct claim where minority shareholders brought class action alleging board of directors breached its fiduciary duty).  To maintain a direct claim, a shareholder "must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." Id. at 1039.

a.      Sternberg Trust's State Court Claims

Under Delaware law, the claims Sternberg Trust brought in state court are derivative.  As detailed above, Sternberg Trust filed its State Complaint "derivatively on behalf of SCAF," alleged only that Ernst & Young breached its duties to SCAF, and claimed damages only for the loss of capital suffered by SCAF.  State Cmplt. at 1, ¶¶ 162-213.  Furthermore, respondents conceded at oral argument that these claims are governed by the arbitration agreements.  Because these claims (1) assert that SCAF suffered the alleged harm and (2) seek recovery on behalf of SCAF, they are derivative claims under Delaware law that are properly within the scope of the arbitration agreements.  See Tooley, 845 A.2d at 1033.

b.      Quinn and Pressman's State Court Claims

Even though Susan Quinn and Peter Pressman classify their state court claims as direct, they are clearly derivative under Delaware law.  As described in greater detail above, Quinn and Pressman seek recovery for damages sustained on account of their investment in SCAF; the injuries all stem from the fact that the Fund suffered a direct injury.  Under Delaware law, injuries sustained on account of having investment or ownership stake in a corporation that diminishes in value are not individually suffered harms.  See Feldman v. Cutaia, 951 A.2d 727, 733 (Del. 2008) (denying standing to

-15-

bring dilution of value claim directly because "to state a direct claim, the plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large"); Gentile v. Rossette, 906 A.2d 91, 99 (Del. 2006) ("[Dilution of value] claims are not normally regarded as direct, because any dilution in value of the corporation's stock is merely the unavoidable result . . . of the reduction in the value of the entire corporate entity, of which each share of equity represents an equal fraction.  In the eyes of the law, such equal 'injury' to the shares resulting from a corporate overpayment is not viewed as, or equated with, harm to specific shareholders individually."); see also In re Worldcom, Inc., 323 B.R. 844, 856 (Bankr. S.D.N.Y. 2005) (applying Delaware law and finding claims at issue derivative because they are "based upon allegations of fraud and misrepresentation on the corporation that resulted in its diminution of value.").  Quinn and Pressman's allegations that Ernst & Young's audit reports fraudulently induced them into investing in SCAF are also derivative, not direct.  See Smith v. Waste Management, Inc., 407 F.3d 381, 385 (5th Cir. 2005) (applying Delaware law and finding that a shareholder's claim that misleading public statements made by a corporation induced him to hold onto shares of stock "did not injure [plaintiff] or any other shareholders directly, but instead only injured them indirectly as a result of their ownership of. . . shares" and concluding that plaintiff's claims were derivative because he cannot prove his injury "without also simultaneously proving an injury to the corporation") (citations omitted).

Respondents rely heavily on Anglo American Security Fund, L.P. v. S.R. International Fund, L.P, 829 A.2d 143 (Del. Ch. 2003), in which the Delaware Court of Chancery categorized breach of fiduciary duty claims and negligent misrepresentation

claims made against an investment fund as direct, not derivative.  See Anglo American, 829 A.2d at 159-160.  Respondents' reliance on Anglo American is misguided, however, as the holding represented only a narrow departure from the general Delaware rule that a claim predicated on the "diminution of the value of a business entity is classically derivative in nature."  Id. at 151.  Moreover, the Anglo American decision was motivated largely by the fact that treating plaintiffs' claims as derivative would, in that case, ensure that recovery would only flow to partners that joined the fund *after* the harm occurred, and would provide no relief to the former partners who were actually harmed by the alleged misconduct.  Id. at 153 ("Characterizing the plaintiffs' claims as derivative would thus have the perverse effect of denying standing (and therefore recovery) to the parties who were actually injured by the challenged transactions while granting ultimate recovery (and therefore a windfall) to parties who were not.").  Such is not the case here, however, because redemptions in SCAF have been frozen, and the state plaintiffs remain members of the Fund.  See State Cmplt.; Reply Mem. of Law in Further Supp. of E&Y Bermuda's Mot. to Compel at 7.  The court also notes that Anglo American was decided before Tooley, in which the Delaware Supreme Court set forth the governing standard by which to distinguish derivative from direct claims.  Tooley, 845 A.2d at 1033.  Finally, the procedural posture of Anglo American is decidedly different from the current case.  Although Anglo American involved a motion to dismiss, Ernst & Young has moved to compel arbitration. Whereas dismissal terminates a claim, the instant Ruling only requires the parties to address their claims in arbitration.  Considering the "liberal federal policy favoring arbitration agreements," this distinction is crucial.  Mitsubishi Motors Corp., 473 U.S. at

626 (citation omitted).

Quinn and Pressman allege injuries that were suffered not by them individually, but rather by SCAF as a whole.  Moreover, since they seek recovery based upon their proportional investment in SCAF, any recovery would be, in the first instance, received by the Fund.  See State Cmplt. at ¶ 2.  Therefore, under Delaware law, Quinn and Pressman's state court claims are derivative in nature and were improperly filed in state court in violation of the provisions of the arbitration agreements between SCAF and Ernst & Young.  See Tooley, 845 A.2d at 1033.

This assessment of respondents' state court claims yields the conclusion that each of respondents' claims is derivative in nature under both Connecticut and Delaware law.  Therefore, regardless of whether Connecticut or Delaware law is applied, respondents' state court claims are derivative, belong to SCAF, and should have been brought in accordance with the arbitration agreements between SCAF and Ernst & Young.

  D.     Unconscionability of Arbitration Agreement

Respondents argue in the alternative that, even if the arbitration agreements between SCAF and Ernst & Young Bermuda do govern the claims they brought against Ernst & Young in state court, they can still maintain their state court action because the arbitration agreements are unconscionable and unenforceable against them.  See Respondents' Mem. at 16.  These claims are without merit.

Primarily, respondents argue that they cannot be bound by the agreements between SCAF and Ernst & Young Bermuda because they were not signatories to those agreements.  Despite not having signed the engagement letters between Ernst &

Young Bermuda and SCAF, the respondents are nonetheless bound by the arbitration agreement contained therein.  "In this circuit, we have repeatedly found that non-signatories to an arbitration agreement may nevertheless be bound according to 'ordinary principles of contract and agency.'"  Smith/Enron Cogeneration Ltd. P'ship Inc., 198 F.3d at 97 (citations omitted).  Because state plaintiffs brought derivative claims against Ernst & Young on behalf of SCAF, they were acting in their capacity as agents of the Fund in doing so, and are therefore bound by the arbitration agreement the Fund entered into with Ernst & Young Bermuda.

Respondents also argue that the arbitration agreements between Ernst & Young Bermuda and SCAF are unconscionable because they (a) cap plaintiffs' damages by limiting liability to the amount of compensation paid to Ernst & Young for its services, (b) limit the parties whom plaintiffs can sue to Ernst & Young Bermuda, and (c) provide that Ernst & Young Bermuda shall only be liable for those actions which result from "willful negligence or dishonesty."  See Engagement Letter of Dec. 7, 2006, Martin Decl. Exh. B at ¶¶ 10, 11; see also Martin Decl. Exhs. C-F (letters from 2005, 2004, 2003, and 2002).  Respondents contend that, because these provisions render the arbitration agreements unconscionable, those agreements are unenforceable even if the respondents' state court claims are derivative and would otherwise be governed by the arbitration agreements.

These claims are also unpersuasive, however, because respondents direct their allegations of unconscionability at the engagement letters as a whole, not at the arbitration agreement provisions contained therein.  In other words, respondents challenge the validity of the contract between Ernst & Young Bermuda and SCAF, not

the validity of the arbitration agreement.  Under the Convention, however, arbitration

agreements are "separable" from the larger contract within which they exist, and a

challenge to an entire contract does not invalidate the arbitration agreement.  See

Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967) (holding that

"a federal court may consider only issues relating to the making and performance of the

agreement to arbitrate," not issues relating to the validity of the contract as a whole).[6]

Even if respondents' claims of unconscionability are colorable, those claims do not

preclude this court from compelling arbitration.[7]  In fact, as respondents conceded at

oral argument, those claims should themselves be raised in arbitration.  See Buckeye

Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006) ("We reaffirm today that

. . . a challenge to the validity of the contract as a whole, and not specifically to the

arbitration clause, must go to the arbitrator.").  Because respondents question the

validity of the engagement letters between Ernst & Young Bermuda and SCAF and not

---

[6] Although Prima Paint arose under the Federal Arbitration Act, 9 U.S.C. §§ 1-14, and not the Convention, Prima Paint's holding that claims of unconscionability must be made against the arbitration agreement directly applies to cases arising under the Convention.  See 9 U.S.C. § 208 ("Chapter 1 [the Federal Arbitration Act] applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States.").

[7] In Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co., 263 F.3d 26 (2d Cir. 2001), the Second Circuit clarified the Prima Paint rule and drew a distinction between an allegation that a contract is "voidable" and an allegation that a contract is "void."  While a general claim that a contract is "voidable" is insufficient to defeat an arbitration clause, a claim that a contract is "void" would be sufficient.  See Sphere Drake, 263 F.3d at 32 ("If a party alleges that a contract is void and provides some evidence in support, then the party need not specifically allege that the arbitration clause in that contract is void, and the party is entitled to a trial on the arbitrability issue. . . . However, under the rule of Prima Paint, if a party merely alleges that a contract is voidable, then, for the party to receive a trial on the validity of the arbitration clause, the party must specifically allege that the arbitration clause is itself voidable.").  In this case, respondents have not alleged that the engagement letters between Ernst & Young Bermuda and SCAF are void in their entirety.  See id. at 31 (describing a "void" contract as one where the "agreement does not come into existence" and asserting that such contracts are "rare").  Therefore, though in some limited instances a general challenge to the validity of a contract may suffice to nullify an arbitration agreement, such is not the case here.

-20-

the validity of the arbitration agreements contained in those letters, the arbitration agreements remain valid, and respondents' unconscionability arguments do not prevent the court from compelling arbitration.

## IV.    CONCLUSION

The arbitration agreements present in the engagement letters between SCAF and Ernst & Young Bermuda are governed by the Convention, 9 U.S.C. §§ 201-208. Additionally, each of respondents' state court claims are derivative under both Connecticut and Delaware law, and, in filing such derivative claims, respondents were acting in their capacity as agents of SCAF.  Those claims should therefore have been brought not in state court, but instead in accordance with the provisions of the arbitration agreements between SCAF and Ernst & Young Bermuda.

Because respondents' state court claims are subject to the arbitration agreements and because those arbitration agreements are themselves subject to the Convention, this court has jurisdiction to compel arbitration and order a stay of the relevant proceedings presently before the Connecticut Superior Court for the District of Stamford-Norwalk. The claims filed against Ernst & Young in state court should properly proceed in arbitration.[8]  Ernst & Young's Motion to Compel Arbitration and for a Stay is

---

[8]  Because the arbitration agreements between SCAF and Ernst & Young Bermuda provide that any dispute shall first be submitted to a mediation process in advance of arbitration, there is the additional issue as to whether this dispute should proceed to mediation or arbitration.  The 2006 agreement provides that, "if a party initiates litigation, arbitration, or other binding dispute resolution process without initiating mediation, or before the mediation process has terminated, an opposing party may deem the mediation requirement to have been waived and may proceed with arbitration."  Addendum to Engagement Letter of Dec. 7, 2006, Martin Decl. Exh. B.  The prior arbitration agreements do not contain this language.  See Martin Decl. Exhs. C-F (addenda to letters from 2005, 2004, 2003, and 2002).

Nonetheless, because the respondents have not challenged the appropriateness of compelling arbitration on the ground that mediation must first be pursued, the court concludes that the mediation requirement has been waived through the commencement of litigation in state court.

**GRANTED**.

**SO ORDERED.**

      Dated at Bridgeport, Connecticut this 26th day of October, 2009.


                                            /s/ Janet C. Hall
                                           Janet C. Hall
                                           United States District Judge